**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    )
JAK MARKETING, LLC,                 )
                                    )
            Plaintiff,              )
                                    )   Civil Action No. 10-5137 (GEB)
      v.                            )
                                    )
ANOOP AGGARWAL, ROHINI              )   **MEMORANDUM OPINION**
AGGARWAL, GIRISH BANSAL,            )
SEEMA BANSAL, ASHOK AGARWAL,        )
NEETA AGARWAL, ROYAL                )
OVERSEAS, INC., ABG APPAREL P LTD., )
KANIKA OVERSEAS, INC., KANIKA       )
OVERSEAS CORPORATION,               )
OM FASHION,                         )
                                    )
            Defendants,              )
                                    )
      v.                            )
                                    )
SAMARTH GUPTA, JULIA                )
KLYASHTORNY, ALEXANDER              )
KLYASHTORNY, ENTICE, INC.,          )
INDIGO MOON, INC., GK TRADING, LLC, )
                                    )
            Third Party Defendants.  )
_____ )

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of Defendants/Third Party Plaintiffs Anoop Aggarwal, Rohini Aggarwal, Girish Bansal, Seema Bansal, Ashok Agarwal and Neeta Agarwal (collectively, "Movants") for an Order appointing a receiver over the assets and the ongoing business operations of Plaintiff JAK Marketing, LLC ("JAK") and directing that the registered trademark "Indigo Moon" not be transferred, hypothecated, loaned or otherwise

encumbered in any fashion pending the outcome of this litigation. (Doc. No. 33).  The Court has decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will deny the motion.

I.      BACKGROUND

On or about October 5, 2006, Defendants Anoop Agarwal, Rohini Aggarwal, Girish Bansal, Seema Bansal, Ashok Agarwal, Neeta Agarwal, Royal Overseas, Inc., ABG Apparel P Ltd., Kanika Overseas, Inc., Kanika Overseas Corporation, and OM Fashion (collectively, "Defendants") filed a Notice of Removal as to Plaintiff's Complaint filed in the Superior Court of New Jersey, Law Division, Somerset County. (Doc. No. 1).  Plaintiff's three-count Complaint alleged claims against Defendants for trademark infringement, unfair competition and injury to business reputation.  On October 14, 2010, the Movants filed an Answer to Plaintiff's Complaint and included a Counterclaim and Third Party Complaint seeking a declaratory judgment awarding them ownership in JAK (Doc. No. 3), which was amended on November 29, 2010 to include additional counterclaims (Doc. No. 12).  Following the February 10, 2011 denial of the motion of Defendants Royal Overseas, Inc., ABG Apparel P Ltd., Kanika Overseas, Inc., Kanika Overseas Corporation, and OM Fashion to dismiss Plaintiff's Complaint for lack of jurisdiction (Doc. No. 16), the Movants filed the instant motion to appoint a receiver on April 12, 2011. (Doc. No. 33).

II.     DISCUSSION

A.      Legal Standard

District Courts have discretion to appoint a receiver "in a proper case".  *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969) (citing *Burnrite Coal Briquette Co. v. Riggs*, 274 U.S.

208, 212 (1927)); *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992) (citing *Tanzer*). "Such an appointment, however, should not be made lightly; it is appropriate only in the face of compelling circumstances and in the absence of a less drastic remedy." *Leone*, 795 F. Supp. at 120 (citation omitted). In fact, "it has been judicially noted almost innumerable times that the appointment of a receiver is an extraordinary, a drastic . . . remedy . . . not to be resorted to if milder measures will give the plaintiff, whether creditor or shareholder, adequate protection for his rights." *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942).

Therefore, as a general rule, "receivers are appointed only when the party seeking receivership has an equitable interest in the property to be seized". *Leone*, 795 F. Supp. at 120 (internal quotations and citations omitted). Additionally, "a district court can appoint a receiver only on a showing of fraud or the imminent danger of property being lost, injured, diminished in value or squandered, and where legal remedies are inadequate." *Id.* (citing *McDermott v. Russell*, 523 F. Supp. 347 (E.D. Pa. 1981), *aff'd*, 722 F.2d 732 (3d Cir. 1983)); *see also In re Nat'l Credit Mgmt. Group, L.L.C.*, 21 F. Supp. 2d 424, 463 (D.N.J. 1998). Thus, "[a]s a prerequisite for the appointment of a receiver it is necessary . . . to show "the existence of some legally recognized right held . . . in the . . . property amounting to more than a mere claim". *McDermott*, 523 F. Supp. at 352 (quoting *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959)).

  **B. Application**

In order for this Court to grant the motion to appoint a receiver for JAK, the Movants must first show an equitable interest in the property to be seized. *Leone*, 795 F. Supp. at 120.

The Movants assert an equitable interest in both JAK and the registered trademark "Indigo Moon" by virtue of having "owned sixty percent of Indigo Moon, Inc." which "included JAK as an entity also owned by Indigo Moon, Inc." (Movants' Br. at 33.)  According to the Movants, they "never consented to the transfer of the valuable trademark to JAK and the third party defendants never had authority to transfer that asset." (*Id.*)

Third Party Defendant Julia Klyashatorny was the sole member of JAK upon its formation on or around December 18, 2003. (Klyashtorny Declaration ¶ 7; Ex. A to the Klyashatorny Declaration.)  The Movants allege, however, that on July 30, 2006 "all of the Indigo Moon, Inc. shareholders, again with the exception of Ms. Klyashtorny, entered into another agreement o[f] understanding. . . . to ensure that all partners had ownership in as well as access to all of the books and records of the various businesses" including "Indigo Moon, Inc., [and] JAK". (Movants' Br. at 11.)  This agreement was allegedly entered into by certain Movants and Third Party Defendant Samarth Gupta. (Ex. M to the Trautmann Affidavit.)  Movants further submit Indigo Moon, Inc. financial statements from as late as March 31, 2008, stating that Indigo Moon, Inc. "is related by common ownership to and has financial control of JAK Marketing Corp." (Ex. N to the Trautmann Affidavit.)

In opposition to the instant motion, Third Party Defendants Gupta and Klyashtorny allege that it was not until on or around September 10, 2008, that Samarth Gupta became a 50% owner of JAK pursuant to the JAK Operating Agreement. (Opp. Br. at 6; Ex. C to the Klyashatorny Declaration.)  Moreover, Mr. Gupta denies signing the July 30, 2006, agreement and asserts that the signature is a forgery. (Opp. Br. at 6; Gupta Declaration ¶¶ 13-14.)  Additionally, Third Party Defendants assert that ownership of Indigo Moon, Inc. was transferred to Ms. Klyashtorny on or

about May 12, 2008, by way of an agreement between Klyashtorny, Gupta, and certain Movants. (Ex. P to the Trautmann Affidavit.) The Movants contend that such an interpretation of the May 12, 2008, agreement is inaccurate. (*See generally* Movants' Reply Br.)

Thus, much of this dispute centers on whether the June 30, 2006, agreement gave the Movants an ownership interest in JAK and whether the May 12, 2008, agreement transferred sole ownership of Indigo Moon, Inc. to Ms. Klyashtorny. It cannot be disputed, however, that current records of the Delaware Department of State, Division of Corporations, and the United States Patent and Trademark Office, respectively, indicate that Indigo Moon, Inc. was dissolved on or about September 11, 2009, and that ownership of the trademark Indigo Moon has been assigned to JAK by Indigo Moon, Inc., at least as of May 12, 2010. (Exs. A, E to the Trautmann Affidavit.) The Movants claim that they did not learn of the dissolution of Indigo Moon, Inc. until the Third Party Defendants filed suit later in 2009 seeking indemnification of personal guarantees made on behalf of Indigo Moon, Inc., which matter is currently in arbitration. (Movants' Br. at 18.)

The Court finds that, from the evidence submitted, it is at best unclear whether Movants hold an equitable interest in JAK sufficient to warrant the appointment of a receiver. Furthermore, there is no evidence of the subterfuge and artifice to fraudulently transfer Indigo Moon to JAK that Movants allege. If the transfer of the Indigo Moon trademark to JAK was indeed accomplished fraudulently, then those are in fact past deeds that do not bring this case within the realm of necessity for the appointment of a receiver. *See Maxwell*, 131 F.2d at 404. Similarly, there is no evidence that the trademark is in imminent danger of being lost, injured, diminished in value, or squandered, beyond the Movants merely saying so. Finally, should

Movants ultimately be successful on their Counterclaims, it would seem that the remedies sought therein, each of which at least in part seek legal remedies, should be sufficient and are, in fact, "less drastic". *See id.* at 404-05; *Leone*, 795 F. Supp. at 120.

### III.   CONCLUSION

For the foregoing reasons, the Movants' motion to appoint a receiver is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: May 19, 2011

       /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.